NAUMBURG and others *v.* HYATT and another.

*(Circuit Court, W. D. North Carolina. May Term, 1885.)*

1. PRACTICE AND PROCEDURE—CONFLICTING CLAIMS—CODE POLICY.
   The general policy of the code system in this state aims to adjust in one action, when practicable, all conflicting claims.

2. SAME—JUDGMENTS—MARSHAL—SUBSEQUENT LEVIES—PRIORITY OF LIENS.
   A marshal who has received and served one attachment may receive and levy a subsequent attachment on the property in his possession, where it issues from the same court, and the right of priority among creditors in having satisfaction of their debts depends upon priority of levy thus made, and not upon priority of judgment. But where the subsequent attachment and levy are made by a different officer, or issue from another court, such proceedings cannot be had.

3. SAME—ATTACHMENT—APPOINTMENT OF RECEIVER—EFFECT.
   Where an attachment has been sued out, and a levy made upon the property of the defendant, a receiver may rightfully be appointed to take charge of the property in the interest of the creditors of the defendant, and will hold the same subject to the attachment lien.

4. SAME—RECEIVER—SUIT AGAINST—CONTEMPT OF COURT.
   Where a receiver has been appointed to take charge of the property and effects of a debtor in the interest of his creditors, suit cannot be instituted against such receiver without first obtaining leave, and to do so without such leave is contempt of court.

5. EXEMPTIONS—ATTACHMENT AND EXECUTION—FRAUDULENT CONVEYANCE.
   The personal property exemptions of an insolvent debtor cannot be reached by an attachment or execution, and his right to such exemptions is not forfeited by the fraudulent conveyance of his property.

Motion in the Cause.

*McLoud & Moore,* for motion.

*J. H. Merrimon* and *Norwood & Smathers, contra.*

DICK, J. The fund in controversy between the parties to this motion came into the possession and under the control of this court by virtue of attachment proceedings instituted by the plaintiffs as a provisional remedy in their civil action, commenced on the eighteenth day of October, 1884, to recover a debt of the defendants, J. R. Hyatt and J. Willis, merchants, trading under the name and style of "J. R. Hyatt & Co." The warrant of attachment was founded upon an affidavit of an agent of the plaintiffs, alleging that the defendants, on the ninth day of October, 1884, with the intent to hinder and delay creditors, had executed a mortgage to M. H. Love, conveying to him a stock of goods and merchandise worth about $4,000, to indemnify him as surety on the stay of certain judgments, amounting to about $427.

Upon a motion at fall term of this court, held on the eleventh day of November, 1884, to vacate said attachment, the court refused the motion, and declared said mortgage fraudulent and void as to creditors. At said term the plaintiffs recovered judgment, and were entitled to have an execution to sell the attached property in satisfaction of their judgment. It was manifest to the court that the sale of a miscellaneous stock of merchandise at public auction, under execution, would result in great loss and damage to creditors and other persons interested. The court, with the assent of parties, appointed a receiver to take possession of said property and sell the same, as soon as possible, in the usual course of trade, with a view to obtain the best prices for the goods, and to pay off the judgment of plaintiffs, and deliver the balance of the proceeds to the defendants.

On the twenty-first of November, 1884, after the adjournment of the court, the petitioners Tucker, Smith & Co. commenced a civil action in this court against the defendants to recover a debt, and at the same time sued out a warrant of attachment, founded upon an affidavit containing allegations of fraudulent intent, substantially the same as those mentioned in the affidavit of the plaintiffs in this case. This attachment was placed in the hands of the marshal before he had delivered possession of the goods to the receiver appointed by this court. The marshal indorsed on the process of attachment a formal levy on said goods and merchandise. Tucker, Smith & Co. then filed a petition praying that they might be heard in the pending cause as to the disposition of the balance of proceeds arising from the sale of goods after satisfaction of the judgment of the plaintiffs.

The court entertained the petition as a proceeding in the nature of an interplea provided for in section 189 of the Code of this state, and ordered a copy to be served on the plaintiffs, the receiver, and the defendants, together with a notice to show cause why the prayer of the petitioners should not be granted.

At May term, 1885, the report of the receiver was filed and approved, and the balance of the proceeds of the property sold, after

payment of judgment of the plaintiffs, was ordered to be deposited with the clerk of this court, and the receiver was relieved from further duty.

At this term the petitioners Tucker, Smith & Co. recovered a judgment on their debt, and insisted in this case that as creditors they were entitled to be heard as to the disposition of the balance of the fund in the hands of the court, and that they had acquired priority over any outstanding creditors by virtue of their attachment levy on the goods and merchandise while in the hands of the marshal.

' By permission of the court, George H. Smathers, the late receiver, by way of an informal interplea under the provisions of the 189th section of the Code, insisted that he was entitled to the fund in controversy by virtue of a deed of trust executed to him by the defendants, J. R. Hyatt and J. Willis, on the fifth day of November, 1884, conveying to him, as trustee for the benefit of all the creditors of the firm of J. R. Hyatt & Co., the stock of goods and merchandise previously mortgaged to M. H. Love on the ninth of October, 1884. In this deed of trust the grantors expressly reserved their rights to claim $500 each as their legal personal property exemptions, and have filed their petition in this cause to have the same duly laid off and allotted to them.

After careful consideration of the briefs and arguments of counsel, and the evidence filed, I am of opinion that the petitioners Tucker, Smith & Co. are entitled to be heard as interpleaders under the Code of this state, as they have a legal interest in the due administration of the fund in controversy in the hands of the court.

The general policy of the Code system in this state aims to adjust in one action, when practicable, all conflicting claims to the same property; and I think that this same policy can be carried out in an action at law in this court in disposing of funds in the hands of the court where no purely equitable element is involved. *Sims* v. *Goettle,* 82 N. C. 268; *Van Norden* v. *Morton,* 99 U. S. 378.

The petitioners, as creditors, commenced a civil action in this court to recover a debt due them by defendants, and upon sufficient affidavit the provisional remedy of attachment was duly issued and placed in the hands of the marshal, who had the property of defendants in possession under the attachment of the plaintiffs. As a general rule, a marshal who has served one attachment may receive and levy a subsequent attachment on the property in his possession, and the right of priority among creditors in having satisfaction of their debts depends upon priority of levy and not upon priority of judgment. Such proceedings cannot be adopted when the subsequent attachment is in the hands of a different officer, or issues from the court of another jurisdiction. *Peck* v. *Jenness,* 7 How. 612.

The fact that a receiver had been appointed with special and limited power to execute the judgment in this case before the levy of the attachment of petitioners does not necessarily avoid the levy and prevent the court from waiving the apparent contempt and recog-

nizing as valid such irregular proceeding. The petitioners were not asserting an adverse right to the plaintiffs, but were seeking a similar remedy in the same court.

The possession of the property was in no way disturbed, and there was no hostile interference with the proceedings in the pending cause. To constitute a contempt of court in such cases there must be some interference with or resistance to the possession of the officer of the court. If a suit is commenced against a regular receiver appointed by a court of equity, without leave of the court, such proceeding is usually regarded as a contempt, as it is the duty of a court of equity to protect such officer from the annoyance and embarrassment of litigation instituted by third persons in the same court or in another jurisdiction; but a receiver may waive his privilege of protection, and appear and plead.

The appointment of the receiver in this case was not necessary to secure the rights of the plaintiffs, as they could have had speedy satisfaction of their judgment by the ordinary process of execution. The execution was issued to preserve the lien, but the sale was ordered to be made by an officer specially appointed by the court with the assent of the parties. This proceeding was unusual and informal, but not irregular from a want of power in the court. The order appointing the receiver did not clothe him with the usual powers and rights of a receiver appointed by a court of equity in a creditors' bill, or by a court of this state in supplemental proceedings under the Code. He was only directed to sell the property in the hands of the court, and satisfy the judgment of plaintiffs, and hold balance of proceeds subject to further order. This course of procedure was adopted for the purpose of promoting the ends of justice, and protecting the rights of all parties interested in the property in the custody of the law.

The matter of the appointment of a receiver *pendente lite* to take charge of property in litigation until the rights of adverse claimants are determined is a subject for the jurisdiction of a court of equity, and such power is not usually exercised unless there is some dispute as to the title of the property, and it is in danger of being wasted or destroyed while in possession of one of the claimants. The title of the property is not transferred to the receiver, but he only holds it as a *custodian* of the court until the rightful owner is ascertained. *Battle v. Davis*, 66 N. C. 252. He is not strictly a trustee, as he has not the legal title, and has assumed the performance of no express or definite trusts. He only obeys the orders and directions of the court which he represents, in holding property. When there are adversary rights to be determined, an indifferent person between the claimants ought to be appointed receiver, as he is to hold the property for the benefit of such party as may establish his right.

In this state the appointment of receivers is regulated by statute, and the authority is vested in courts which can exercise legal and equitable jurisdiction in the same action. In the federal courts the

two systems of law and equity jurisdiction are separate and distinct, and legal and equitable remedies for ascertaining and establishing rights cannot be blended in the same action.     Under the Code of this state (section 379) the superior courts are empowered to appoint receivers, "after judgment, to carry the judgment into effect."     This provision seems to contemplate a proceeding in execution which the court may adopt when more effectual and beneficial than the ordinary process of law.     I think that such a proceeding can be adopted by this court in an action at law as to property in its possession.     It is a mere matter of procedure in execution, and does not involve the determination of any equitable right.     Under the liberal and remedial provisions of section 916 of the Revised Statutes, a plaintiff who has obtained a judgment in an action at law in a federal court of this state may have the benefit of any remedy, by execution or otherwise, which is afforded to a judgment plaintiff in the courts of this state. *Ex parte Boyd,* 105 U. S. 647; *Fink* v. *O'Neil,* 106 U. S. 272·; S. C. 1 Sup. Ct. Rep. 325.

By the above provision and other legislative enactments congress has clearly manifested a wise and enlightened purpose of bringing about, as near as may be, judicial harmony, convenience, and uniformity in the practice, procedure, and remedies in actions at law in the federal and state courts of the same locality.     But, independent of the provisions of the above-named statute, I am of opinion that there is an inherent power in a court of law as well as a court of equity over its own process, and in the disposition of property in custody of the law, so as to prevent serious injury to the parties interested in such property, and to afford just and adequate relief. *Krippendorf* v. *Hyde,* 110 U. S. 276; S. C. 4 Sup. Ct. Rep. 27.

By reference to the case of *Rogers* v. *Odom,* 86 N. C. 432, and the cases cited, it will appear that the courts of this state, in the exercise of their protective jurisdiction, may commit to the keeping and management of their clerks, or other appointed officer, funds brought into the actual custody of the court, and may impose on such appointee the duty of selling property and collecting the proceeds under the direction of the court without investing such officer with the usual powers and rights of a receiver in equity.

It was insisted by the counsel of petitioners that the deed of trust to G. H. Smathers, dated November 5, 1884, is void, for the reason that at the time of its execution the property attempted to be conveyed was *in custodia legis* by virtue of the attachment of the plaintiffs, and could not be rightfully interfered with in any way by the owners.

To this proposition the trustee replied that the owners had a right to convey their interest subject to the lien of said attachment, and insisted that the levy of the attachment of the defendants, made after the appointment of a receiver, was invalid and a contempt of court, as the receiver's rights of possession, and actual possession, in con-

templation of law, commenced from the date of appointment. A warrant of attachment under the Code of this state is not an original process to bring parties into court, but is a provisional remedy, and is always ancillary to a civil action commenced by summons. *Branch* v. *Frank*, 81 N. C. 180. The possession of property taken by the sheriff under the attachment creates a lien in favor of the attaching creditor, and the property is held as a security for the satisfaction of any judgment which may be recovered in the action against defendant.

The attached property is *in custodia legis*, but the title of defendant is not divested until seizure and sale under execution. The court will not allow the possession of the sheriff to be disturbed, but the defendant can convey his interest in the property subject to the existing lien. *Murchison* v. *White*, 8 Ired. Law, 52. In the case of an execution levied upon personal property the seizure by the sheriff of the property, if of sufficient value, is a *prima facie* satisfaction of the judgment, and the defendant loses the property, and it vests in the sheriff for the special purpose of satisfying the debt. If the sheriff seizes more property than is necessary to satisfy the execution debt, then the title to the excess of such property remains in the defendant, and he has an interest capable of being sold and conveyed. *Alexander* v. *Springs*, 5 Ired. Law, 475.

In the case before the court the marshal attached property largely in excess of the debt claimed by plaintiffs. The defendants had a clear right to execute a *bona fide* deed of trust conveying their interest in such property subject to the attachment lien.

We will now proceed to consider the questions as to what interest was conveyed by said deed in trust, and was such deed fraudulent. The grantors had, on the ninth day of October, 1884, mortgaged all their stock of goods and merchandise to M. H. Love. This transaction was the foundation of the attachment proceedings in this case, and also of the attachment of the petitioners. The court was satisfied, from the facts and circumstances appearing in affidavits, that the mortgagors executed the mortgage with the fraudulent intent of hindering and delaying creditors, but there was no evidence that the mortgagee concurred in this fraudulent intent, and the mortgage would have been declared valid if it had not, *on its face*, been fraudulent in law. The mortgage is void as to creditors, but it is valid as between the parties. The mortgagors, therefore, only had an equity of redemption in the stock of goods mortgaged, and such was the extent of the interest conveyed by them to the trustee, G. H. Smathers, on the fifth of November, 1884. As to said trustee, the mortgagee, Love, had a right to said goods or their proceeds to the value of $427, and was entitled to said amount against the claim of the defendant grantors for their personal property exemptions. The deed of trust to George H. Smathers is not upon its face void at law, and there are no facts and circumstances set forth in the deed which give rise to legal presumptions of fraud. The deed was duly registered on the day after

its execution, and it is not assailed in the affidavit which was made by the agent of petitioners as the ground of their attachment. In an action at law, where the fraudulent intent of the maker of a deed is involved, this question may be considered upon affidavits, and be passed upon by the court upon a motion to dissolve an attachment and restore the goods to the possession of the grantee; but when the right and title of the claimant are to be finally decided, the question of fraudulent intent must be determined by a jury.

It was further insisted by the petitioners that the trustee, George H. Smathers, by assuming the duties of a receiver, waived his rights under the deed of trust, and is estopped from making claim to the fund in court. The acceptance of the limited receivership by the trustee, for the purpose of selling the property for the benefit of all parties interested, was in no way inconsistent with his claim of title, or in conflict with his powers and duties as trustee. This deed of trust was duly registered, and was constructive notice to all adverse claimants. No title was conferred upon him by the order of appointment as receiver. There was no necessity for his asserting title when he assumed the duty of selling the property under the direction of the court. There was no improvidence on the part of the court in appointing the trustee, as he had the legal title, and was directly interested in selling to the best advantage of all the creditors, and he was not claiming adversely to the plaintiffs in the pending action. *Levenson* v. *Elson,* 88 N. C. 182. At that time the petitioners had no lien, and they were in no way deceived, misled, or defrauded of any right in dealing with the property. The doctrine of estoppel, when applied, always presupposes error on one side, and falsehood or fraud on the other, which has resulted in injustice or wrong to the party deceived or misled in dealing with the property involved. The doctrine is available only for protection, and cannot be used as a weapon of assault. *Dickerson* v. *Colgrove,* 100 U. S. 578. In this case none of the principles of either legal or equitable estoppel can be applied. The petitioners had constructive notice of the order appointing the receiver, and of the registered deed of trust, and they have acquired all the rights to which they are legally entitled by the levy of their attachment.

The petitioners further insisted that personal property exemptions ought not to be allowed to the defendants, Hyatt and Willis, out of the proceeds of goods and merchandise which they had obtained from their creditors by gross misrepresentations, falsehood, and fraud, when there are solvent notes and accounts in the hands of their trustee, and while there are other means in their possession and enjoyment which ought to be applied to the payment of their debts.

The petitioners, in their allegations and affidavits, present many strong circumstances of fraud and falsehood, and the defendants have filed several counter-affidavits in explanation and defense; but, in the view which I have taken of the matter, it is unnecessary for me

to express any decided opinion as to the preponderance of the conflicting evidence. In this proceeding I can only dispose of the property in the hands of the court, in accordance with the legal rights of the contending parties. The trustee, Smathers, by the deed of trust, acquired the equity of redemption, which the grantors had, under the mortgage, made to M. H. Love. The mortgage is valid as between the parties, and, as against the mortgagors and their trustee, Love had a right to claim property to the amount of $427. Under the fraudulent mortgage Love cannot claim this amount against the petitioners, who are creditors, and have acquired a lien by virtue of the levy of their attachment. If the defendants were allowed this amount as their personal property exemptions, Love could recover the same from them, and thus he would obtain the benefit of the fraudulent mortgage, as against creditors. I am therefore of opinion that the petitioners are entitled to an order of the court for the payment of $427 out of the funds in dispute.

The defendants, Hyatt and Willis, are not entitled to the balance of the fund, as they have conveyed all their interest to George H. Smathers, trustee, and they must look to him for the allotment of their exemptions. *Norman* v. *Craft*, 90 N. C. 211.

From the evidence filed it appears that the trustee has in his hands $800 in solvent notes and accounts which belonged to the firm of J. R. Hyatt & Co., and this amount, when added to the amount received from this court as balance of proceeds of property sold by the receiver, will be sufficient for personal property exemptions.

I will not determine the rights of the mortgagor, Love, as against the defendant mortgagees, but I am strongly inclined to the opinion that they will not be entitled to any exemptions out of the proceeds of the goods embraced in the mortgage until the mortgage debts are paid.

The supreme court of this state, in several decisions, has established the doctrine that the personal property exemptions of an insolvent debtor cannot be reached by an attachment or execution, and his right to such exemptions is not forfeited by the fraudulent conveyance of his property. *Commissioners* v. *Riley*, 75 N. C. 144; *Gaster* v. *Hardie*, Id. 460.

The humane and beneficent provisions of the constitution and laws of this state as to exemptions were intended to prevent an insolvent debtor and his family from being reduced to a condition of absolute poverty, and deprived of the ordinary comforts of life. This right is given to honest debtors, and also to those debtors who have attempted to defraud their creditors. Before a dishonest debtor can be legally entitled to exemptions, all of his property must be available to creditors, and the debtor must not retain any of the fruits of his fraud, or remain in the enjoyment of any of his property except his exemptions. If any of his property remains in his hands unappropriated to creditors, or be by him put out of their reach by any fraudulent device or ar-

rangement, then such property, to the extent of its value, will be regarded by the law as a satisfaction of his claims for exemptions. *Bruff* v. *Stern,* 81 N. C. 183.

The affidavits filed by the petitioners tend strongly to show that the defendants, Hyatt and Willis, used a considerable amount of the proceeds of their mercantile business in building and furnishing handsome houses belonging to their wives, and are now in the possession and enjoyment of such property. With this matter I have nothing to do in this proceeding. It may be that creditors, by filing a bill in equity against the trustee and defendants, may be able to make all the property of defendants, except their legitimate exemptions, available in the satisfaction of debts. Courts of equity have ample powers and facilities for investigating, adjusting, and determining such matters, and affording adequate relief.

Let an order be draw in conformity with this opinion, directing the disposition of the funds in controversy.